David S. Gingras, #021097
**Gingras Law Office, PLLC**
4802 E. Ray Road, #23-271
Phoenix, AZ 85044
Tel.: (480) 264-1400
David@GingrasLaw.com

Plaintiff

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| David S. Gingras,<br><br>Plaintiff,<br><br>v.<br><br>James D. Lee; Maret Vessella; Andrew Ivchenko & Renee Ivchenko, Husband and Wife,<br><br>Defendants. | Case No. ___________________<br><br>**VERIFIED COMPLAINT** |

For his Verified Complaint, Plaintiff David S. Gingras ("Plaintiff" or "Gingras") alleges as follows:

## I. INTRODUCTION

1. This case presents a basic question of Constitutional law that should not be controversial – does the First Amendment protect political speech by lawyers?

2. According to the State Bar of Arizona the answer is **NO**.

3. In the Bar's view, when a lawyer accepts a law license, he surrenders all rights under the First Amendment as part of the price of admission.

4. The Bar's position is plainly and egregiously wrong; "[A]ttorneys and other trial participants do not lose their constitutional rights at the courthouse door." *Levine v. United States Dist. Court for Cent. Dist.*, 764 F.2d 590, 595 (9th Cir. 1985).

5. Over the last 50 years, the Arizona Bar, and certain other state bars, have demonstrated open contempt for the First Amendment.

6. The Arizona Bar, and others, have been admonished repeatedly by the United States Supreme Court on this very issue. *See*, *e.g.*, *Baird v. State Bar of Arizona*, 401 U.S. 1 (1971) (holding Arizona Bar violated the First Amendment rights of an applicant who refused to answer questions regarding her political associations, explaining, "The practice of law is not a matter of grace, but of right for one who is qualified by his learning and his moral character."); *Bates v. State Bar of Arizona*, 433 U.S. 350 (1977) (Arizona Bar violated lawyer's First Amendment rights by prohibiting truthful attorney advertisements); *In re: Primus*, 436 U.S. 412, 432–33 (1978) (explaining, "[b]ecause First Amendment freedoms need breathing space to survive, government may regulate [the practice of law] only with narrow specificity.") (quoting *NAACP v. Button*, 371 U. S. 415 (1963)); *Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991) (explaining, "At the very least, our cases recognize that disciplinary rules governing the legal profession cannot punish activity protected by the First Amendment, and that First Amendment protection survives even when the attorney violates a disciplinary rule he swore to obey when admitted to the practice of law.") (emphasis added).

7. Most other states have had no difficulty understanding and accepting the Supreme Court's clear and binding decisions. *See In re Green*, 11 P.3d 1078, 1083 (Colo. 2000) (noting, "we begin with the accepted legal principle that if an attorney's activity or speech is protected by the First Amendment, disciplinary rules governing the legal profession cannot punish the attorney's conduct."); *In re Olin*, 2024 WL 6881775, *8 (Cal. Bar Ct. 2024) ("Case law acknowledges that disciplinary rules governing the legal profession cannot punish speech protected by the First Amendment.")

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

8. As explained below, the State Bar of Arizona has openly, repeatedly and unlawfully defied the authority of the United States Supreme Court to issue controlling legal decisions restricting the Bar's ability to punish Arizona attorneys for their Constitutionally-protected speech and conduct.

9. The Arizona Bar is, of course, free to disagree with the U.S. Supreme Court. That fact aside, the U.S. Supreme Court's rulings are final and controlling; "Lower court judges may sometimes disagree with this Court's decisions, but they are never free to defy them." *National Inst. of Health v. American Public Health Ass'n*, 145 S. Ct. 2658, 2663 (2025) (mem.) (Gorsuch, J., concurring in part).

10. This Court cannot force the State Bar of Arizona or its staff to act rationally, ethically or responsibly.

11. This Court can, however, order Defendants to act **lawfully**. That includes obeying the Constitution and binding decisions from the U.S. Supreme Court.

## II. SUMMARY OF REQUESTED RELIEF

12. This is an action brought pursuant to *Ex parte Young*, 209 U.S. 123 (1908) and 42 U.S.C. § 1983 seeking prospective declaratory and injunctive relief to restrain certain Defendants from violating Plaintiff's Constitutional rights.

13. Plaintiff seeks declaratory relief to the effect that his challenged speech identified herein is true, lawful, and fully protected by the First Amendment.

14. Plaintiff further seeks declaratory relief to the effect that his Constitutionally-protected speech is not subject to future punishment or retaliation under any law, rule, or regulation of the State of Arizona or the State Bar of Arizona.

15. Plaintiff also seeks declaratory relief holding that certain aspects of Arizona law are unconstitutional, facially and as-applied, and as such, that Plaintiff is entitled to both preliminary and permanent injunctive relief restraining Defendants from enforcing any such unconstitutional law, statute, or rule.

16. Finally, Plaintiff seeks an order pursuant to 17 U.S.C. § 411(b)(2) informing the United States Register of Copyrights that certain false information was

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

provided to the Register in connection with the registration of a copyright, and asking the Register to advise the Court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration.

17. Upon receipt of the Register's response to that question, Plaintiff further seeks an order and judgment invalidating the certificate of registration for a copyrighted work assigned registration number VA0002154452 on the basis that the registration was obtained by fraud.

## III. PARTIES

18. Plaintiff David Gingras is lawyer. Mr. Gingras is a resident and citizen of the State of Arizona and an active member in good standing of the State Bars of both California and Arizona. Plaintiff has been licensed to practice law in the State of California since February 2002, and in the State of Arizona since October 2004.

19. Defendant James D. Lee ("Mr. Lee") is a lawyer currently employed by the State Bar of Arizona as Senior Bar Counsel. Mr. Lee is sued in his official capacity as an agent of the State Bar of Arizona.

20. Defendant Maret Vessella ("Ms. Vessella") is Chief Bar Counsel at the State Bar of Arizona. Ms. Vessella is sued in her official capacity as an officer of the State Bar.

21. Defendant Andrew Ivchenko ("Mr. Ivchenko") is a lawyer licensed to practice law in Arizona. At all times relevant to this action, Mr. Ivchenko was married to Defendant Renee Ivchenko ("Mrs. Ivchenko"). Mr. and Mrs. Ivchenko are residents and citizens of the State of California.

## IV. JURISDICTION AND VENUE

22. This Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action arises under the First and Fourteenth Amendments to the United States Constitution, and under federal statute, 42 U.S.C. § 1983.

23. The Court also has federal question jurisdiction under 28 U.S.C. § 1338 as to those claims arising under the Copyright Act.



GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

24. The Court further has jurisdiction as to Plaintiff's declaratory relief claims pursuant to 28 U.S.C. § 2201.

25. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims against Mr. and Mrs. Ivchenko because those claims are closely related to other claims in this matter, they arise from the same events and occurrences, such that they form part of the same case or controversy.

26. Although this case involves certain evidence relating to a prior, and at least one still-pending, bar disciplinary case, this action seeks no *retroactive relief* that would require the Court to abstain under the *Rooker-Feldman* doctrine or any other similar rule or doctrine. *See*, *e.g.*, *Olivier v. City of Brandon, Missouri*, 607 U.S. 552, 560 (2026) (holding even when litigant has been previously convicted of violating law which he claims was unconstitutional, "Assuming a credible threat of [future] prosecution, a plaintiff may bring a § 1983 action to challenge a local law as violating the Constitution and to prevent that law's future enforcement.")

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

27. *Rooker-Feldman* specifically authorizes federal court jurisdiction to grant *prospective* relief in the form requested here; "Challenges to the constitutionality of state bar rules, therefore, do not necessarily require a United States District Court to review a final state court judgment in a judicial proceeding. Instead, the District Court may simply be asked to assess the validity of a rule promulgated in a non-judicial proceeding. … [In that context] United States District Courts ... **have subject matter jurisdiction over general challenges to state bar rules**, promulgated by state courts in non-judicial proceedings, which do not require review of a final state court judgment in a particular case." *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983) (emphasis added).

28. This action involves general challenges to certain state bar rules and thus does not implicate *Rooker-Feldman* or any other abstention doctrine.

29. Venue in this district is proper pursuant to 28 U.S.C. §§ 1391(b) because several Defendants reside in this district.

## V. CASE SUMMARY[1]

### Part 1 — Andrew & Renee Ivchenko

30. This dispute arises from and involves two completely unrelated legal matters. The first, chronologically, involved a series of events and lawsuits beginning in 2018 when Defendant Renee Ivchenko was arrested in Scottsdale for assaulting a police officer while she was drunk.

31. After her arrest, Mrs. Ivchenko's mugshot and information about her arrest was posted on the Internet by the Maricopa County Sheriff's Office.

32. Thereafter, the mugshot (which showed Mrs. Ivchenko in a disheveled and angry state, scowling at the camera) was republished on several third-party websites and on social media websites such as Twitter (now x.com).

33. For understandable reasons, Mr. Ivchenko (a lawyer) was unhappy about his wife's unflattering mugshot being posted on the Internet.

34. As a lawyer, Mr. Ivchenko knew mugshots are public records, and he knew the publication of mugshots by private parties is, by itself, not unlawful because it constitutes protected speech under the First Amendment.

35. Mr. Ivchenko also knew the publication of lawfully-obtained public records is protected by the First Amendment as explained in *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975).

36. Despite knowing the publication of his wife's mugshot was not unlawful, Mr. Ivchenko formed a plan to facilitate the removal of Mrs. Ivchenko's photo from the Internet.

[1] Plaintiff is mindful that Fed. R. Civ. P. 8(a) only requires a "short and plain statement of the claim", and that "[a] complaint that is 'argumentative, prolix, replete with redundancy . . . [and] consists largely of immaterial background information' is subject to dismissal." *Donahoe v. Arpaio*, 2011 U.S. Dist. LEXIS 126512, *14 (D.Ariz. 2011).

At the same time, this action arises from prior disputes which involved complex and convoluted facts. Understanding the claims at issue in this case necessarily requires a discussion of the main relevant background facts which are quite complicated. Every effort has been made to ensure this Complaint is as concise as possible while still providing sufficient factual support for the relief requested.



GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

37. This plan was described in detail in a Verified Complaint filed in *Grant v. Ivchenko*, U.S. District Court Case No. 21-CV-108-JJT. A true and correct copy of that pleading is attached hereto as Exhibit 1 and the allegations of that pleading are incorporated by reference.

38. In short, Mr. Ivchenko's plan involved registering a copyright in his wife's mugshot, which he later did in early 2019.

39. In a copyright registration application submitted to the U.S. Copyright Office, Mr. Ivchenko made several false representations including:

a. That Renee Ivchenko was the "author" of an untitled work – a photograph – which was submitted by Mr. Ivchenko as the deposit copy in connection with the application. The untitled work was, in fact, Mrs. Ivchenko's mugshot taken by law enforcement at the time of her arrest in Scottsdale in April 2018. Mrs. Ivchenko was not the author of the photograph.

b. Mr. Ivchenko falsely represented that the photograph was first published on March 10, 2018. Mr. Ivchenko knew that date was false because he knew Mrs. Ivchenko was arrested more than a month later on April 21, 2018, and her knew her mugshot was created on that date, making publication of the photo in March 2018 impossible. Mr. Ivchenko intentionally misrepresented the date of publication to "backdate" the certificate of registration, making it appear (falsely) as though the work was first published before it appeared on any third-party websites.

40. When Mr. Ivchenko submitted the copyright application to the Copyright Office, he signed a form certifying that all information contained in the application was true and correct.

41. Mr. Ivchenko knew at the time he submitted the copyright application that all information contained therein was not true and correct.

42. Pursuant to 17 U.S.C. § 506(e), it is a federal crime to make any false representation of material fact in an application for copyright registration.

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

43. The Copyright Office does not normally fact-check registration applications for accuracy. Instead, the office relies on the facts stated in each application when determining whether to issue a certificate of registration.

44. In this instance, the Copyright Office relied on Mr. Ivchenko's false statements without verifying them. On March 23, 2019, it issued a certificate of registration for the untitled work bearing Registration Number VA0002154452 listing Mrs. Ivchenko as the author and owner of the work. *See*: https://publicrecords.copyright.gov/detailed-record/voyager_30810125

45. Ordinarily, pursuant to 17 U.S.C. § 410(c), a copyright registration certificate "shall constitute *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate."

46. However, a registration certificate obtained by fraud is not valid and does not convey any ownership rights to the person who committed the fraud; "a registration is invalid under § 411(b) if the registrant perpetrated fraud on the Copyright Office by knowingly misrepresenting material facts." *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1067 (9th Cir. 2022).

47. As alleged above, Mr. Ivchenko knowingly committed fraud on the Copyright Office while obtaining the registration certificate for his wife's mugshot.

48. Because the registration certificate was obtained by fraud, the certificate was and is invalid as a matter of law, and it conveyed no exclusive rights to Mrs. Ivchenko.

49. After Mr. Ivchenko obtained the registration certificate for his wife's mugshot, he sent multiple takedown notices to website owners under the Digital Millennium Copyright Act ("DMCA"); 17 U.S.C. § 512.

50. In each notice, Mr. Ivchenko falsely represented to the recipient that his wife Renee owned a valid copyright in her mugshot (as evidenced by the registration certificate for that work), and that she had the lawful right to invoke the DMCA's notice-and-takedown process.

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

51. Mr. Ivchenko further falsely represented that the publication of his wife's mugshot infringed her legal rights under the Copyright Act.

52. Mr. Ivchenko signed each notice under penalty of perjury despite knowing that each notice contained false statements of material fact.

53. Several website operators who received takedown notices from Mr. Ivchenko complied with those requests by removing Mrs. Ivchenko's mugshot.

54. In addition to DMCA takedown demands, Mr. Ivchenko also sent emails and messages threatening the owners of other websites involved in republishing Mrs. Ivchenko's mugshot and/or requesting its removal. One such owner was a Florida resident named Travis Grant ("Mr. Grant").

55. At that time, Mr. Grant owned and operated multiple websites that published mugshots.

56. In his message to one site operated by Mr. Grant, Mr. Ivchenko falsely represented that his wife was "never charged". In truth, Mr. Ivchenko knew that felony charges were, in fact, filed against his wife, and that to resolve those charges, Mrs. Ivchenko accepted a pretrial diversion offer which required her to sign a statement admitting guilt. In return, Mrs. Ivchenko was required to complete rehab and/or treatment related to her alcoholism, after which the charges against her were dismissed.

57. After reviewing Mr. Ivchenko's removal request, Mr. Grant added the word "DISMISSED" to the page featuring Mrs. Ivchenko's mugshot, but he otherwise refused to remove the mugshot.

58. Based on Mr. Grant's refusal to remove Mrs. Ivchenko's mugshot, Mr. Ivchenko filed a series of lawsuits against Travis Grant and members of his family.

59. The first case was *Ivchenko v. Grant*, Maricopa County Superior Court Case No. CV2019-090493. In the original Complaint filed in that case, Mr. Ivchenko falsely alleged his wife was defamed by the publication of her mugshot because it implied she was "guilty of a crime". The Complaint demanded damages of at least $1 million.

60. At the time, Mr. Ivchenko knew his wife had signed a statement acknowledging that she was, in fact, guilty of a crime, and that nothing published by Mr. Grant regarding Mrs. Ivchenko was false or inaccurate in any way.

61. Mr. Ivchenko voluntarily dismissed the first action after it was removed to this Court.

62. Seven months later in December 2019, Mr. Ivchenko commenced a second lawsuit against Mr. Grant, which he again later voluntarily dismissed after it was removed to this Court, followed by a series of many additional cases.

63. The Arizona Rules of Professional Conduct require all lawyers to inform the State Bar if they learn of information which raises a substantial question as to the honesty, trustworthiness, or fitness of another lawyer.

64. Based on the events described above, on May 7, 2020, Plaintiff submitted a report to the State Bar of Arizona regarding Mr. Ivchenko. A copy of that report is attached as Exhibit 2.

65. In more than 20 years as a member of the Arizona bar, this was the first and only time Plaintiff had ever submitted a complaint regarding another attorney.

66. Less than two weeks later, on May 20, 2020, the State Bar of Arizona sent Plaintiff a letter dismissing the complaint about Mr. Ivchenko. A true and correct copy of the letter is attached as Exhibit 3.

67. In this letter, the State Bar closed the complaint with no investigation, stating:

> The issues you raise, such as allegations of frivolous claims and lawsuits, perjury, false and misrepresented copyright claims, and inappropriate action and misrepresentation under the Digital Millennium Copyright Act, are legal issues that require a determination by a court of law. As you are involved in current, ongoing civil litigation, the court is the appropriate venue at this point to address issues related to your case, as the court is the most familiar with the facts, rules, statutes, and case law for your case. Concerns such as yours should, therefore, be addressed to the judge presiding over your proceedings. It is inappropriate for the State Bar to get involved in active cases, except under certain circumstances not applicable

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

> here. Further, your allegations that federal crimes were committed should be addressed to the appropriate law enforcement agency. The State Bar has no authority to investigate criminal activity. (emphasis added)

68. After the State Bar refused to take any action against Mr. Ivchenko, he continued to pursue litigation against the Grant family for more than a year and a half, causing them substantial economic harm and emotional distress.

69. One such case was a putative class-action suit filed on July 2, 2021 by Mr. Ivchenko on behalf of a plaintiff identified only as "John Doe" in *Doe v. Grant*, Maricopa County Superior Court CV2021-090710.

70. The class action complaint purported to seek relief on behalf of a class "consisting of several hundred thousand persons previously arrested in Arizona."

71. Mr. Ivchenko, who had no prior experience litigating cases in Arizona state or federal courts on behalf of anyone other than his wife, never disclosed the identities of the individual class members, nor did he ever move to certify the class.

72. Instead, Mr. Ivchenko named *Google, LLC* as a defendant in the class action, without any valid basis for doing so. He thereafter contacted Google and threatened to drag it into the litigation. That threat caused Google to terminate an advertising services relationship with Mr. Grant, resulting in significant financial losses and harm.

73. After being victimized by multiple groundless lawsuits filed by Mr. Ivchenko, and after the State Bar of Arizona failed to take any action to stop Mr. Ivchenko's unlawful conduct, Travis Grant sued Mr. and Mrs. Ivchenko in a case filed in this Court on January 21, 2021, Case No. 21-cv-108-JJT, asserting claims for, among other things, malicious prosecution/wrongful use of civil proceedings. *See* https://www.courtlistener.com/docket/33974865/grant-v-ivchenko/

74. Eight months later, on August 3, 2021, while the federal action was still pending against him, rather than asserting counterclaims or third-party claims in the federal case, Mr. Ivchenko filed a separate state court action against Plaintiff styled



GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

*Ivchenko v. David Gingras*, *et al.*, Maricopa County Superior Court Case No. CV 2021-093562.

75. That state court action was later stayed at Plaintiff's (Mr. Gingras') request while the federal case against Mr. and Mrs. Ivchenko remained pending.

76. On October 29, 2021, while multiple lawsuits remained pending by and between Mr. Ivchenko, Mr. Grant, and Plaintiff, Mr. Ivchenko filed a complaint with the State Bar of Arizona accusing Plaintiff of professional misconduct, a copy of which is attached as Exhibit 4.

77. In this email, Mr. Ivchenko accused Plaintiff of violating Ethical Rule ER 4.2 which prohibits a lawyer from *knowingly communicating with a represented party*. That complaint was based on the fact that just days earlier, Plaintiff assisted Mr. Grant in drafting a settlement offer which was posted by Mr. Grant on his website.

78. The settlement offer proposed to resolve claims asserted by the anonymous class members in the Class Action Case. It did so by explaining to any class members that Mr. Grant wanted to resolve the litigation based on terms contained in the offer.

79. Beyond simply posting this offer on his website, neither Mr. Grant nor Mr. Gingras sent the offer to any specific individuals.

80. The settlement offer published by Mr. Grant was not sent by Plaintiff to any person who he knew was represented by Mr. Ivchenko. In truth, at that time Plaintiff believed Mr. Ivchenko did not represent any clients at all.

81. That belief was supported by the fact that in two prior lawsuits, Mr. Ivchenko represented parties identified only by pseudonyms such as John or Jane Doe. In each instance, Plaintiff moved for an order requiring Mr. Ivchenko to disclose the true names of his clients (as it was impossible to defend against his clients' claims without knowing their real names).

82. After Mr. Ivchenko was ordered to disclose his clients' names, rather than complying with the court's order he simply dismissed the case. That conduct caused Plaintiff to conclude Mr. Ivchenko did not actually represent any clients at all.

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

83. Even though there was pending litigation between Mr. Ivchenko and Plaintiff, and even though Mr. Ivchenko's complaint specifically referenced the pending litigation and events occurring within the context of that litigation, the State Bar of Arizona did not follow the same policy it used to close Plaintiff's complaint against Mr. Ivchenko; i.e., the policy providing: "It is inappropriate for the State Bar to get involved in active cases …."

84. Instead, based on Mr. Ivchenko's complaint, the State Bar filed a disciplinary action against Plaintiff accusing him of *attempting* to violate ERs 4.2 (prohibiting a lawyer from communicating directly with a party known to be represented by counsel, 4.4(a) (prohibiting lawyers from using means that have no substantial purpose other than to embarrass, delay, or burden any other person), and 8.4(a) simply because Plaintiff assisted Mr. Grant in drafting a settlement offer which he (Mr. Grant) posted on his website.

85. The State Bar's position was directly contrary to ABA Formal Opinion 11-461 entitled "Advising Clients Regarding Direct Contacts with Represented Persons." That opinion advised: "Parties to a legal matter have the right to communicate directly with each other. A lawyer may advise a client of that right and may assist the client regarding the substance of any proposed communication. The lawyer's assistance need not be prompted by a request from the client. Such assistance may not, however, result in overreaching by the lawyer." (emphasis added).

86. Defendant Lee was not involved in the initial stage of the Bar's discipline case relating to Mr. Ivchenko's complaint. However, after formal proceedings were commenced, Mr. Lee appeared in the case on behalf of the State Bar, and he remained involved until the case was concluded.

87. On September 19, 2022, after months of litigation, Mr. Lee filed a Motion to Dismiss the discipline case, claiming a necessary witness "has chosen to forgo being interviewed" and that as a result, "Bar counsel believes the State Bar would likely be



GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

unable to prove a violation of the Rules of Professional Conduct without that witness's participation in a hearing on the merits."

88. After months of litigation, expense, and stress, the discipline case pursued by Mr. Lee was dismissed without any finding of wrongdoing on Plaintiff's part.

89. In 2025, the State Bar filed a petition with the Arizona Supreme Court seeking to add comments to ER 4.2 mirroring the language of ABA Formal Opinion 11-461. The Supreme Court later granted that petition which resulted in the following comment being added to ER 4.2: "parties to a matter may communicate directly with each other and a lawyer having independent justification for communicating with the other party is permitted to do so; **a lawyer is not prohibited from advising a client concerning a communication that the client is legally entitled to make** …." (emphasis added).

90. The settlement offer posted by Mr. Grant on his website was a communication that he was legally entitled to make.

91. Plaintiff's conduct in advising Mr. Grant regarding that issue was completely lawful and ethical.

92. Mr. Lee knew Plaintiff's conduct was lawful and ethical at the time.

93. On December 10, 2021, a settlement agreement was reached between Mr. Ivchenko, Mr. Grant, and several related parties/entities, but <u>excluding Plaintiff</u>.

94. The purpose of the agreement was to resolve multiple pending lawsuits between Mr. Ivchenko and Mr. Grant.

95. The settlement agreement also involved the dismissal of *Ivchenko v. Gingras*, *et al.* which, at that time, remained pending but stayed.

96. Although the settlement agreement resolved all pending cases, including the suit filed by Mr. Ivchenko against Plaintiff, <u>Plaintiff refused to accept the settlement terms</u> because those terms were unacceptable to him.

97. The settlement agreement was eventually executed by 14 signatories, including a different lawyer (not Plaintiff) who represented the Grant family and advised



GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

them regarding the terms. Plaintiff did not represent the Grant family with respect to the settlement agreement.

98. Plaintiff rejected the terms of the settlement as it applied to any claims by/between him and Mr. Ivchenko. No settlement terms were ever agreed to by and between Mr. Ivchenko and Plaintiff.

99. As a non-party, Plaintiff was not and is not bound by any of the settlement agreement's terms.

100. No signatory to the agreement had authority to act on Plaintiff's behalf in signing the agreement, and the agreement does not identify Plaintiff as a party bound by its terms.

101. Based on the events described above Plaintiff wrote an article entitled: "**Is The State Bar of Arizona Broken/Corrupt? (Yes, it is…here's proof)**".

102. A true and correct copy of the article is attached hereto as Exhibit 5. As of the date of this Complaint, the article remains publicly visible on Plaintiff's website here: https://gingraslaw.com/is-the-state-bar-of-arizona-broken-corrupt-yes-it-is-heres-proof/.

103. Plaintiff also published two other pages on his website which contain documents supporting the allegations made in the article. Those pages are: https://gingraslaw.com/the-ivchenko-files-part-1-of-a-billion/ and https://gingraslaw.com/the-ivchenko-files-document-index/. The contents of these pages are incorporated by reference, but the pages and files themselves are not attached for purposes of brevity.

104. Every word published by Plaintiff on his website regarding Mr. Ivchenko is factually true, accurate, and/or represents Plaintiff's opinions based on fully disclosed facts (the disclosed facts being the documents and records contained within the posts published by Plaintiff).

105. Shortly after Plaintiff published these pages, Mr. Ivchenko threatened (through counsel) to sue Plaintiff for "false light".



GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

106. As a lawyer with decades of experience litigating defamation and related claims, Plaintiff is familiar with the false light tort.

107. Based on that familiarity, Plaintiff asked Mr. Ivchenko's counsel to identify any aspect of Plaintiff's statements that was not entirely true and accurate.

108. Mr. Ivchenko's counsel never responded to that request.

109. Instead, on April 8, 2026, Mr. Ivchenko filed a new charge with the State Bar of Arizona accusing Plaintiff of misconduct by posting the article accusing the State Bar of corruption and the related pages of supporting documents. That charge has since been assigned State Bar File No. 26-0934.

110. The central allegations of the charge were set forth in a memorandum written by ChatGPT or a similar AI service with input from Mr. Ivchenko, attached as Exhibit 6.

111. Mr. Ivchenko's charge in State Bar File No. 26-0934 specifically identifies the article written by Plaintiff and quotes the following statements from it: "Mr. Ivchenko's efforts to hide his wife's mugshot included committing multiple state and federal crimes…" "Protecting the public? More like defrauding the public."

112. Mr. Ivchenko then alleged:

> These are not statements of opinion or rhetorical hyperbole; they are direct assertions of specific criminal conduct presented as fact. Those assertions are false and misleading. The referenced conduct—obtaining a copyright registration and submitting related materials—was undertaken through formal processes and is documented in public records. No court or adjudicative body has found that Andrew Ivchenko committed criminal fraud, perjury, or any related offense.
>
> Respondent was aware, or reasonably should have been aware, that these allegations were unsupported by any judicial finding. Respondent continued to publish and republish these accusations even after notice, disputes, and platform enforcement actions, supporting an inference of knowing or intentional misrepresentation.

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

113. Mr. Ivchenko's allegation that Plaintiff made "false and misleading" statements about him in the Bar corruption article was, itself, knowingly false.

114. At the time Mr. Ivchenko submitted this charge to the State Bar, he knew every word published about him by Plaintiff in the articles referenced above was true, honest, accurate, and not misleading in any way.

115. At no time has Plaintiff ever published any statement claiming Mr. Ivchenko was *convicted* of any crime relating to the copyright registration application, the DMCA notices, or anything else. That is entirely the point of the articles Plaintiff published — that Mr. Ivchenko *committed* crimes but then escaped legal responsibility for his conduct (so far).

116. The central "gist" or "sting" of those articles is that while acting as an attorney, Mr. Ivchenko did, in fact, commit serious crimes involving dishonesty and fraud, that those crimes were reported to the State Bar of Arizona which claims to serve the goal of "protecting the public", and that the State Bar failed to take any action in response, thus allowing Mr. Ivchenko to cause substantial financial harm to Plaintiff's clients.

117. Based on those true facts, Plaintiff formed the honest belief that the State Bar of Arizona is, in fact, corrupt and that misconduct by State Bar employees has caused and is continuing to cause serious harm to the public.

118. Plaintiff's speech criticizing Mr. Ivchenko and the State Bar of Arizona constitutes political speech and speech on matters of public interest/concern which is entitled to the highest degree of protection under the First Amendment; "[S]peech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011).

119. As lawyers, both Mr. Ivchenko and Mr. Lee are aware the First Amendment generally protects truthful criticism of others, including other attorneys.

120. As lawyers, both Mr. Ivchenko and Mr. Lee are aware that under Arizona law, non-commercial publications are not required to be literally true in every respect.

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

121. Both Mr. Lee and Mr. Ivchenko know, or reasonably should know, that in any defamation, false light, or related action based on critical speech, "the defendant need not prove the literal truth of every detail, but must only prove that the statements are substantially true. Substantial truth is an absolute defense to a defamation action in Arizona. Slight inaccuracies will not prevent a statement from being true in substance, as long as the 'gist' or 'sting' of the publication is justified." *Read v. Phoenix Newspapers, Inc*., 169 Ariz. 353, 355, 819 P.2d 939, 941 (Ariz. 1991).

122. After Mr. Ivchenko's initial charge in File No. 26-0934 was submitted to the Bar, he discussed the matter with Defendant Lee.

123. During those communications, Mr. Lee learned all of the statements Plaintiff published about Mr. Ivchenko were either completely true or substantially true, and were not false or misleading or inaccurate in any way.

124. In addition, after reviewing Mr. Ivchenko's charge and the AI-generated memorandum, Mr. Lee knew, or reasonably should have known, that Mr. Ivchenko's charge contained false statements that could easily be verified as false by checking with objective third-party sources.

125. Specifically, the AI-generated memo contained the following allegation: "The posts further incorporate arrest-related video footage that, upon information and belief, <u>was not publicly released by law enforcement</u>." (emphasis added).

126. No reasonable attorney who reviewed the pages published by Plaintiff about Mrs. Ivchenko's arrest would accept Mr. Ivchenko's assertion that they contain "video footage that … was *not publicly released by law enforcement*." That statement is objectively verifiably false.

127. If Mr. Lee believed there was any possibility that Plaintiff somehow illegally obtained and published bodycam footage from the Scottsdale Police which was not, in fact, intentionally released by the Scottsdale Police, he could have conclusively verified that fact by contacting Scottsdale Police and asking about this. Mr. Lee never did so.



GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

128. The pages in question contain no video footage of any kind other than bodycam footage obtained by Plaintiff directly from the Scottsdale Police Department in response to a public records request showing Mrs. Ivchenko's arrest.

129. All such footage IS a public record under Arizona law, and was lawfully released by Scottsdale Police in response to a valid public records request.

130. The publication of police bodycam footage lawfully obtained through a public records request is *per se* protected speech under the First Amendment.

131. Similarly, Plaintiff's publication of court records relating to Mrs. Ivchenko's arrest and the subsequent litigation between Mr. and Mrs. Ivchenko and the Grant family, is both constitutionally protected speech *and* is separately privileged under Arizona law.

132. Mr. Ivchenko's AI-generated memorandum contains other objectively false statements including an allegation that Plaintiff engaged in: "replication of conduct prohibited by a binding settlement agreement …." That statement is entirely false.

133. Although the settlement agreement contained a confidentiality provision prohibiting Mr. Ivchenko from disclosing the agreement to anyone without prior written notice to the other parties, Mr. Ivchenko violated the agreement by disclosing a copy to Mr. Lee.

134. The settlement agreement contains no terms that are binding on Plaintiff, nor does the agreement restrict Plaintiff's speech in any way whatsoever. The terms of the agreement itself clearly do not apply in any way to Plaintiff.

135. Mr. Lee knew or should have known this.

136. Mr. Ivchenko's complaint also claims Plaintiff violated Ethical Rule ER 8.4(d) by engaging in conduct that is "prejudicial to the administration of justice" based on Plaintiff's Constitutionally-protected publication of information regarding Mr. Ivchenko.

137. Finally, Mr. Ivchenko's complaint claims Plaintiff violated ER 4.4(a) which provides: "In representing a client, a lawyer shall not use means that have no substantial

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

purpose other than to embarrass, delay, or burden any other person, or use methods of obtaining evidence that violate the legal rights of such a person." (emphasis added).

138. Mr. Lee and Mr. Ivchenko each know that other constitutional issues aside, ER 4.4(a) does not apply to Plaintiff's criticism of Mr. Ivchenko (or the Bar) on his website because Plaintiff's decision to publish this information was not done while "representing a client", nor was Plaintiff otherwise involved in the practice of law with respect to those publications.

139. As a result of Mr. Lee's unlawful conduct (as further described below), Plaintiff has retired from the practice of law and is no longer actively representing clients except for one minor matter pending in this Court in which Plaintiff is acting as local counsel for another attorney.

140. Despite knowing that Plaintiff's conduct as described above was entirely lawful in all respects, on October 9, 2026, Defendant Lee sent a "screening letter" to Plaintiff relating to State Bar File No. 26-0934, a copy of which is attached hereto as Exhibit 7.

141. In this letter, Mr. Lee demanded a response to Mr. Ivchenko's complaint, including a discussion of the following rules: ER 4.4(a), ER 8.4(c) and (d), and Rule 41(b)(5) and (7), Ariz. R. Sup. Ct. (including the Oath of Admission to the Bar).

142. This screening letter is part of a long pattern of unlawful harassment and abuse by Mr. Lee stretching over a period of multiple years.

143. Over the last 2 years, Mr. Lee has sent more than a dozen similar screening letters to Plaintiff, forcing Plaintiff to spend hundreds of hours drafting responses to claims which were objectively frivolous and groundless.

144. These demands have included multiple instances in which Mr. Lee himself is the sole complaining party.

145. In one specific instance, Mr. Lee viewed videos Plaintiff posted on YouTube. In one such video, Plaintiff briefly mentioned that he "had a case pending in Florida that involved 3-D printed guns."

146. In that video, Plaintiff never mentioned the name of the client, but suggested the case could be interesting due to the recent arrest of accused killer Luigi Mangione in connection with a shooting of a healthcare CEO during which Mr. Mangione allegedly used a 3-D printed silencer.

147. Acting entirely on his own and not based on any complaint from a third party, on December 19, 2024, Mr. Lee sent a screening letter to Plaintiff, assigned State Bar File No. 24-3080, a copy of which is attached hereto as Exhibit 8.

148. In that letter, Mr. Lee cited a video Plaintiff posted on YouTube on December 10, 2024 which contained the following statement: "I have a client who is involved in a weird case in federal court in Florida involving 3D printed guns. I had an 8:00 a.m. Zoom call this morning about that case. [. . .] That may have something to do with our case, directly or indirectly. We're going to find out."

149. Mr. Lee's letter demanded that Plaintiff explain why this remark did not violate Arizona's Ethical Rule ER 1.6(a) (which states: "A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent ….")

150. At the time Mr. Lee sent this letter, no person had contacted Mr. Lee claiming Plaintiff had revealed any confidential client information without consent.

151. Mr. Lee's letter further threatened to punish Plaintiff if he failed to respond, noting, "Pursuant to ER 8.1(b) and Rule 54(d), Ariz. R. Sup. Ct., you have a duty to cooperate with this investigation. Failure to fully and honestly respond to, or cooperate with, the investigation is, in itself, grounds for discipline."

152. Mr. Lee's statements regarding ER 8.1(b) constitute a false statement of the law. ER 8.1(b) provides that a lawyer shall not: "knowingly fail to respond **to a lawful demand** for information from an admissions or disciplinary authority …."

153. Mr. Lee knew, at all relevant times, that Plaintiff was under no legal obligation to respond to *unlawful* requests for information, including those screening letters referenced in this Complaint.



GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

154. The Florida case mentioned in the video was *Larosiere v. Wilson*, 24-cv-1629 filed in the United States District Court for the Middle District of Florida. At the time Plaintiff mentioned the case, all relevant pleadings were publicly available on both PACER and numerous other third-party websites such as https://www.courtlistener.com/docket/69134978/larosiere-v-wilson/.

155. *Larosiere v. Wilson* involved a novel issue of copyright ownership over computer files which could be used to print firearms using 3-D printer. For that reason, the case had already generated substantial attention on social media before Plaintiff mentioned it, and Plaintiff's involvement in that matter was already widely known.

156. In Mr. Lee's December 19, 2024 letter, he also raised a separate issue which was based on a complaint he received from a third party. That separate issue involved a private email Plaintiff sent to the operator of a website called Reddit.com. In that email, Plaintiff referred to a group of fans following a different case (explained more fully below) as: "*total fucking psychotic assholes*."

157. On its face, the email Plaintiff sent containing this coarse language did not involve the practice of law. Rather, Plaintiff sent the email privately, on his own behalf, not on behalf of any client, for the sole purpose of asserting his own legal rights.

158. Nothing about the letter to Reddit involved the practice of law.

159. Mr. Lee knew, or should reasonably have known, that "one who acts only for himself in legal matters is not … practicing law." *Munger Chadwick, P.L.C. v. Farwest Dev. & Const. of the Sw., LLC*, 235 Ariz. 125, 127 n.3, 329 P.3d 229, 231 n.3 (Ariz. App. 2014).

160. Mr. Lee knew, or reasonably should have known, with certain narrow exceptions and limitations, the Rules of Professional Conduct do not generally apply to lawyers who are not engaged in the practice of law.

161. Mr. Lee knew or should have known this because that point is expressly recognized in Comment 1 to Arizona Supreme Court Rule 41 (setting for the Duties and Obligations of Members):



GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

> Lawyers, whether or not engaged in the practice of law, should act honorably and treat others with courtesy and respect. Unprofessional conduct, as defined by Rule 31(a)(2)(E), **during the practice of law** may result in discipline pursuant to Rules 41(g) and 53(j). Specific conduct outside the practice of law, such as conviction of a felony, Rule 53(h), or engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation, Rule 42, ER 8.4(c), and Rule 53(a), may also be grounds for discipline. (emphasis added).

162. After enduring months of near-constant threats and harassment by Mr. Lee, on January 2, 2025, Plaintiff sent a letter to Defendant Vessella, a copy of which is attached hereto as Exhibit 9.[2]

163. In this letter, Plaintiff set forth a summary of Mr. Lee's unlawful conduct and demanded that Ms. Vessella take appropriate steps to immediately cease that conduct.

164. Defendant Vessella received Plaintiff's letter but responded only to say that she refused to discuss the issue.

165. Defendant Vessella thereafter took no action to limit or control Mr. Lee's unlawful conduct, despite knowing of that conduct, and despite having the ability and owing a duty to stop it.

166. By refusing to stop Mr. Lee's unlawful conduct, Defendant Vessella ratified Mr. Lee's conduct.

167. On January 6, 2025, Plaintiff sent a response to Mr. Lee's December 19, 2024 letter, a copy of which is attached hereto as Exhibit 10. This response noted that among other things, Plaintiff's brief passing reference to *Larosiere v. Wilson* did not violate Arizona's Ethical Rule ER 1.6 because that rule did not apply to the case.

168. *Larosiere v. Wilson* was a matter pending in federal court in Florida, not Arizona.

169. Plaintiff explained to Mr. Lee that he appeared in that case *pro hac vice*, and that when he was admitted to practice in that case, Plaintiff agreed to comply with

[2] The letter attached as Exhibit 9 contains a typographical error on the first page, indicating it was sent on January 2, 2024. The letter was, in fact, sent on January 2, 2025.



GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

the Local Rules of the Middle District of Florida which provided: "A lawyer appearing in the Middle District must remain familiar with, and is bound by, the rules governing the professional conduct of a member of The Florida Bar".

170. Plaintiff further explained Florida's version of ER 1.6 (Florida Rule of Professional Conduct 4-1.6) was substantially different from Arizona's version and that the Florida rule specifically permitted the disclosure of even confidential information without client consent in any case where the lawyer believed such disclosure would serve the client's interest.

171. With respect to the use of coarse language in a private email, Plaintiff informed Mr. Lee that such language was protected by the First Amendment and cited extensive authority to support that position. *See*, *e.g.*, *Leidholdt v. L.F.P., Inc.*, 860 F.2d 890, 894 (9th Cir. 1998) (holding First Amendment protected magazine's right to publish "Asshole of the Month" column which included article criticizing a plaintiff as a "pus bloated walking sphincter ….."); *Michino v. Lewis*, 2015 U.S. Dist. LEXIS 77614, *26 (D.Hawaii 2015) (holding First Amendment protected plaintiff's right to call police officer "a fucking asshole", and explaining, "As rude and sophomoric as Plaintiff's speech to Officer Lewis may have been, 'it represented an expression of disapproval toward a police officer' and, as such, 'fell squarely within the protective umbrella of the First Amendment." (cleaned up) (emphasis added) (quoting *Duran v. City of Douglas, Ariz.*, 904 F.2d 1372, 1378 (9th Cir. 1990)); *City of Houston, Tex. v. Hill*, 482 U.S. 451, 461 (1987)); *Wood v. Eubanks*, 25 F.4th 414, 424 (6th Cir. 2022) (compiling cases, holding First Amendment protected plaintiff's right to use coarse language including, "motherfucker" and "asshole"; "We have held that similar speech is protected by the First Amendment when unaccompanied by other conduct, which is consistent with the rule that '[f]its of rudeness or lack of gratitude may violate the Golden Rule' but are not illegal ….") (emphasis added) (quoting *Green v. Barber*, 310 F.3d 889, 895 (6th Cir. 2002) (explaining, "Standards of decorum have changed dramatically since 1942, moreover, and indelicacy no longer places speech beyond the protection of the First

Amendment."); *Kindred v. Colby*, 2015 N.Y. Misc. LEXIS 5105, *9, 50 N.Y.S.3d 26 (Supreme Court of New York, Monroe County, 2015) (holding First Amendment protected statement: "Gotta love assholes who hide behind group names like 'Friends of Northhampton Park'.") (emphasis added); *Tuvell v. Marshall*, 96 Mass. App. Ct. 1107; 137 N.E.3d 1090; 2019 WL 5654950 (Mass. App. 2019) (holding First Amendment protected speech criticizing Plaintiff by referring to him as "'special', a 'jerk,' 'a few cherries short of a sundae,' and 'an asshole,' and describing his posts as 'whiny' and 'bitching.'") (emphasis added); *Dillon v. City of New York*, 261 A.D.2d 34, 37 (App. 1st Div. 1999) (holding First Amendment protected statement referring to plaintiff as: "what a fucking asshole.") (emphasis added).

172. Despite knowing Plaintiff's speech was Constitutionally protected, Defendant Lee later made a false representation of law to the Disciplinary Committee in which he avowed that Plaintiff's speech was not protected because, in Mr. Lee's view, the First Amendment does not apply to lawyers in the same manner as non-lawyers with regard to offensive speech.

173. Based on Mr. Lee's false representation of law, the Disciplinary Committee issued a finding of probable cause and authorized Mr. Lee to file a formal disciplinary complaint against Plaintiff based on the protected speech used in a private email.

174. Mr. Lee thereafter filed a formal Complaint against Plaintiff before the Presiding Disciplinary Judge in *In Re: Gingras*, PDJ2026-9010. A copy of the operative pleading in that case — the Amended Complaint — is attached as Exhibit 11 and is incorporated herein by reference.

175. The original and Amended Complaints filed by Mr. Lee in PDJ2026-9010 accuse Plaintiff of violating Arizona Supreme Court Rule 41(b)(7) (requiring lawyers to "To avoid engaging in unprofessional conduct and to advance no fact prejudicial to the honor or reputation of a party or a witness unless required by the duties to a client or the tribunal.") by sending a private email referring to a group of anonymous third parties as: "total fucking psychotic assholes."

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

176. After months of litigation, and after Plaintiff filed dispositive motions arguing that the First Amendment protected his right to use coarse language in a private email, on September 23, 2026, Mr. Lee withdrew that allegation from the case.

177. Mr. Lee has engaged in a clear pattern of unlawful harassment, abuse, and intentional violations of Plaintiff's Constitutional rights while acting under color of law which includes, but is not limited to:

a. Sending more than a dozen screening letters to Plaintiff demanding that Plaintiff review and respond to large amounts of information arising from Plaintiff's Constitutionally-protected speech, some of which was submitted by third parties and some of which related to issues where Mr. Lee was the sole complainant; and

b. Filing disciplinary proceedings that he knew were groundless at the time they were filed, including claims attempting to punish Plaintiff for engaging in speech and conduct that Mr. Lee knew was Constitutionally protected; and

c. Forcing Plaintiff to incur substantial time and effort defending groundless claims; and

d. Pursing, litigating, and then dismissing meritless claims only after using them to harass Plaintiff and to cause Plaintiff to suffer severe personal, professional, and reputational harm; and

e. By directly and unlawfully retaliating against Plaintiff for exercising his Constitutional right to engage in free speech on matters of public interest and concern; and

f. By threating to continue doing so in the future.

178. In addition to prohibiting state actors like Mr. Lee from taking direct action to punish protected speech, the First Amendment also prohibits state actors like Mr. Lee from using indirect threats as a form of coercion; "[g]overnment officials cannot to



GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

attempt to coerce private parties in order to punish or suppress views that the government disfavors." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 180 (2024) (citing *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963) (holding First Amendment forbids government from using "the threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation…" as a form of censorship)).

179. Mr. Lee has repeatedly engaged in a course of illegal conduct in which he has used both direct action and indirect threats of action for the purpose of coercion, persuasion, and intimidation seeking to suppress Plaintiff's Constitutionally-protected speech.

180. Mr. Lee and Ms. Vessella have made it clear Mr. Lee's unlawful conduct will not stop unless he is restrained by this Court.

**Part 2 — *Owens v. Echard***

181. The second case at issue is *Owens v. Echard*, a family court proceeding filed in August 2023 by a woman named Laura Owens against a man named Clayton Echard in Maricopa County Superior Court Case No. FC2023-052114.

182. As noted above, Defendant Lee has charged Plaintiff with professional conduct committed during *Owens v. Echard* (claims which Plaintiff has denied).

183. Approximately half of the allegations in that case have since been voluntarily withdrawn by Mr. Lee, but some significant issues remain pending with a trial date set for January 2027.

184. One specific issue involves statements Plaintiff made criticizing a state court judge named Julie Ann Mata who was the trial judge in *Owens v. Echard*.

185. Among other things, Plaintiff accused Judge Mata of violating the Code of Judicial Conduct by secretly considering extra-judicial evidence which included making findings based on statements posted on social media during and after the trial which were never admitted in evidence.

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

186. Plaintiff's allegations against Judge Mata were reported to the Commission on Judicial Conduct and were set forth in a detailed Notice of Change of Judge For Cause, Exhibit 12, and a detailed supporting affidavit. Exhibit 13.

187. Based Plaintiff's statements regarding Judge Mata, Mr. Lee charged Plaintiff with violating ER 8.2(a) which provides: "A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge …."

188. In response to that specific charge, Plaintiff admitted making statements criticizing the judge, but denied that any of those statements were false or made with reckless disregard for the truth.

189. Plaintiff further alleged that every statement he made about Judge Mata was either factually true, or represented a protected expression of opinion.

190. Plaintiff argued truthful statements criticizing a judge are protected by the First Amendment as the Ninth Circuit has held; "Attorneys who make statements impugning the integrity of a judge are, however, entitled to other First Amendment protections applicable in the defamation context. To begin with, attorneys may be sanctioned for impugning the integrity of a judge or the court only if their statements are false; truth is an absolute defense." *Standing Comm. v. Yagman*, 55 F.3d 1430, 1438 (9th Cir. 1995).

191. In response, Defendant Lee argued that the First Amendment does not apply to lawyers, and therefore the State Bar of Arizona may lawfully punish an attorney for criticizing a judge even when the criticism is entirely true.

192. Mr. Lee further took the position that ER 8.2(a) is not limited to only false statements. He also argued that a lawyer could be punished for violating that rule by making a *true* statement with reckless disregard for the truth.

193. Mr. Lee also argued opinions do not constitute protected speech.

194. The Presiding Disciplinary Judge agreed with Mr. Lee's position and granted judgment on the pleadings in favor of the State Bar with respect to the alleged



GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

violation of ER 8.2(a). However, no final judgment has been entered on that claim because other issues remain unresolved.

195. Plaintiff understands the *Rooker-Feldman* and *Younger* abstention doctrines prohibit this Court from intervening in pending state matters, nor can this Court act as an appellate court reviewing final state court judgments. Arguments challenging the legality and validity of pending state court disciplinary proceedings must proceed through the normal appellate process in state court, and eventually to the U.S. Supreme Court.

196. At the same time, as the Supreme Court held in *Feldman* and its progeny, District Courts can grant prospective declaratory and injunctive relief in cases challenging state bar rules on constitutional grounds.

197. Here, Plaintiff <u>only</u> seeks declaratory and prospective relief.

198. Also, in cases presenting *facial* challenges to a state law, "A plaintiff … must prove that the statute applies unconstitutionally to a substantial amount of speech relative to its constitutional applications." *Arizona Attorneys for Criminal Justice v. Mayes*, 127 F.4th 105, 107 (9th Cir. 2025).

199. Although this case also presents as-applied challenges to various rules, Plaintiff also asserts that some rules are also facially unconstitutional. As such, it is necessary to allege facts showing those disputed rules do, in fact, apply unconstitutionally to a "substantial amount" of speech relative to other things.

200. For that reason, this Complaint will briefly discuss certain aspects of *Owens v. Echard* and the related disciplinary case solely for the purpose of showing that the State Bar rules challenged in this action are, in fact, unconstitutional.

201. Plaintiff does not ask this Court to interfere in any way with the pending disciplinary proceeding or to act as an appellate court reviewing any decisions made in that case.

202. Plaintiff did not represent Ms. Owens when she filed her initial *pro se* petition against Mr. Echard in the Maricopa County Superior Court on August 1, 2023.

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

203. In her *pro se* petition to establish paternity, Ms. Owens claimed she had a brief, one-night romantic encounter with Mr. Echard in May 2023.

204. Mr. Echard was a celebrity who previously appeared on a popular reality TV dating show called *The Bachelor*.

205. In response to Ms. Owens' paternity claim, Mr. Echard alleged she fabricated the pregnancy and created fake medical records to support her claim.

206. Those unusual allegations coupled with Mr. Echard's celebrity status caused the case to receive massive amounts of attention from local, national, and international news media.

207. While *Owens v. Echard* was pending, it was followed closely by thousands of people on social media, many of whom discussed the case in online chat rooms, message boards, and similar sites.

208. In those discussions, some individuals expressed their dislike for Plaintiff due to his representation of Ms. Owens and due to his litigation strategies which they perceived as overly aggressive.

209. Several individuals who supported Mr. Echard, at least some of whom were actively working together, decided to weaponize the State Bar's disciplinary process as a way of harassing Plaintiff and retaliating against him for his representation of Ms. Owens and for his Constitutionally-protected speech about the case.

210. This resulted in approximately a dozen complaints being filed against Plaintiff, including:

**SBA File No. 24-1199 (Dave Neal)**
**SBA File No. 24-1692 (Holli Wammack)**
**SBA File No. 24-1826 (Dr. Deans)**
**SBA File No. 24-2483 (Julie Mata)**
**SBA File No. 24-3064 (Jessica Leila Adnani)**
**SBA File No. 24-3080 (Jim Lee/AZ Bar)**
**SBA File No. 25-2183 (Joshua Kiel Stroke)**
**SBA File No. 25-2757 (John Lettman)**
**SBA File No. 25-2599 (Lauren Neidigh)**

211. Some of these complaints were assigned to Bar Counsel *other than* Defendant Lee. In each of those instances, the complaints were deemed facially unworthy of a response, and they were dismissed without any response from Plaintiff.

212. However, many of these complaints were assigned to Defendant Lee, and except for a single instance (in which the complainant named Joshua Kiel Stroke failed to respond to a request for information), Mr. Lee determined the allegations were sufficient to demand a written response from Plaintiff.

213. In many instances, the complaints Defendant Lee demanded that Plaintiff respond to were facially groundless and unintelligible. In one specific instance (File No. 24-1692), the initial complaint contained several pages of rambling, incoherent text, a portion of which is shown below:

> Gingras's latest blog, he has begun a smear campaign towards Judge Mata, in the Owens vs Echard recent case. https://gingraslaw.com/lo-v-ce-post-trial-update/https://gingraslaw.com/lo-v-ce-now-what-some-thoughts/ IMPORTANT: https://x.com/i/status/1786809738682040502 GINGRAS POSTED A VIDEO OF HIS CLIENT LIFTING HER DRESS ABOVE HER BOOBS SHOWING HER BLUE BRA AND BLACK PANTY LINES. I FIND THIS EXTREMELY ALARMING BEHAVIOR FOR AN ATTORNEY TO POST SUCH VIDEO OR EVEN IMAGE. David Gingras on his twitter https://x.com/DavidSGingras continues to post his clients perjury statements. His client was found guilty of perjury, fraud, and evidence tampering. PLEASE TAKE NOTICE OF IMAGES FROM DAVID GINGRAS BLOG THAT WERE SCREENSHOT AND POST TO TWITTER. https://pbs.twimg.com/media/GQeY_gBWoAABUnt?format=png&name=large https://pbs.twimg.com/media/GQeZOoVXgAEQe1y?format=png&name=large DINGRAS RELEASED SEALED DEPOSITION AND MEDICAL RECORDS OF DR. DEAN BEFORE TRIAL.... WOODNICK BROUGHT IT UP AT TRAIL THAT DAVID GINDRAS RELEASED EXPERT REPORTS WITHOUT DOCTORS PERMISSION OR THE COURT. CLEAR VIOLATION. REQUEST FOR YOU TO LOOK INTO DAVID GINGRAS BEHAVIOR ON JUNE 10TH 2024 GINGRAS IN TRIAL WAS CAUGHT BY WOODNICK LAW FIRM AND THE JUDGE COACHING HIS CLIENT LAURA OWENS ON THE STAND. WOODNICK HAD TO PLACE HERSELF IN BETWEEN LAURA ON THE STAND AND GINGRAS SO HE WOULD STOP COACHING HER. https://x.com/i/status/1801175765565735142 MY LAST REQUEST IS FOR THE STATE BAR TO LOOK INTO GINGRAS CONDUCT MORNING OF TRIAL, GINGRAS CALLED 911 ON A WITNESS FOR WOODNICKS FIRM ECHARD CASE. THE WITNESS NAMED MICHAEL MARRICINNI WAS Subpoena TO BE A WITNESS IN THE CASE... HE WAS INTIMIDATING A WITNESS ON SOCIAL MEDIA AND MORNING OF THE TRIAL. HIS CONDUCT THAT MORNING OF TRIAL WAS UNPROFESSIONAL ON EVERY LEVEL. PLEASE REACH OUT TO WOODNICK LAW FIRM, HE HAS EXPERIENCED GINGRAS MISCONDUCT THROUGH SOCIAL

214. Despite the facially nonsensical nature of the complaint shown above, Mr. Lee nevertheless forwarded it to Plaintiff and demanded that he promptly respond in writing or face discipline for failing to cooperate.

215. In Mr. Lee's screening letter for File No. 24-1692, attached as <u>Exhibit 14</u>, he demanded that Plaintiff review the complaint and explain why his conduct did not violate each of the following Rules: ER 1.6(a) (prohibiting a lawyer from revealing



GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

confidential information), ER 3.1 (prohibiting frivolous claims), ER 3.3(a) (prohibiting knowingly false statements), 3.4(c) (disobeying a duty imposed by rules of a tribunal), ER 4.4(a) (prohibiting means that have no substantial purpose other than to embarrass, delay, or burden any other person), ER 8.2(a) (prohibiting false statements impugning the integrity of a judge), ER 8.4(b) (committing a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer, (c) (prohibiting conduct involving dishonesty, fraud, deceit or misrepresentation) and (d) (prohibiting conduct that is prejudicial to the administration of justice);, and Rules 41(b)(7) (lawyers must "avoid engaging in unprofessional conduct and to advance no fact prejudicial to the honor or reputation of a party or a witness unless required by the duties to a client or the tribunal") and 54(c) (violating any rule or order), Ariz. R. Sup. Ct.

216. Respondent thereafter spent hours attempting to understand and respond to the allegations in File No. 24-1692. Plaintiff informed Mr. Lee that most of the complaint's allegations were too unintelligible for any meaningful response.

217. In turn, the complainant sent back over 40 pages of additionally non-sensical claims (mostly screenshots of social media posts with little or no context). The complainant also sent additional allegations in an email dated June 26, 2024 in which she made the following claims regarding Plaintiff's conduct during the *Owens v. Echard* evidentiary hearing held on the morning of June 10, 2024:

> Moreover, Mr. Gingras's behavior intensified during the trial on June 10th. He arranged for an excessive security detail, including a bomb squad, drug-sniffing dogs, and a police escort, for himself and his client at the courthouse. A witness, who had been subpoenaed and consistently approved by Judge Matta, was subjected to Mr. Gingras's disturbing actions. He made an unwarranted 911 call, during which he followed the witness and disclosed personal information to the operator. Such behavior was not only inappropriate but also indicative of the trial's charged atmosphere.

218. The full evidentiary hearing in *Owens v. Echard* was video recorded and later posted on YouTube. *See*, *e.g.* https://www.youtube.com/watch?v=jvrRPf2YYQk

219. Any person viewing the hearing would know that Plaintiff did not have "a bomb squad" or "drug-sniffing dogs" at the courthouse.

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

220. Despite the obvious falsities in the complaint assigned File No. 24-1692, Mr. Lee demanded that Plaintiff respond to each of its allegations, which Plaintiff did spending multiple hours drafting a response that exceeded 100 pages.

221. Mr. Lee thereafter included charges in the complaint he filed in PDJ2026-9010 which were based on allegations contained in File No. 24-1692 which Mr. Lee knew or should have known were false.

222. After months of litigation, Mr. Lee has since abandoned most, but not all, of the charges in PDJ2026-9010 which were based on File No. 24-1692; the sole remaining allegation from that matter number involved the criticism Plaintiff directed toward the trial judge in *Owens*.

223. Based on the above, Defendant Lee believes, incorrectly, that lawyers like Plaintiff have no right to engage in public speech on matters of public interest unless the language used meets Mr. Lee's personal approval.

224. Defendant Lee has harassed, retaliated, and has threatened to continue to harass and to retaliate against Plaintiff for exercising his First Amendment rights unless and until he is enjoined from doing so.

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

## FIRST CAUSE OF ACTION — FIRST AMENDMENT RETALIATION IN VIOLATION OF 42 U.S.C. § 1983
## (Against Defendant James D. Lee)

225. Plaintiff realleges the factual allegations set forth above.

226. The Ninth Circuit has explained:

> A plaintiff may bring a Section 1983 claim alleging that public officials, acting in their official capacity, took action with the intent to retaliate against, obstruct, or chill the plaintiff's First Amendment rights. To bring a First Amendment retaliation claim, the plaintiff must allege that (1) it engaged in constitutionally protected activity; (2) the defendant's actions would "chill a person of ordinary firmness" from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in the defendant's conduct—i.e., that there was a nexus between the defendant's actions and an intent to chill speech.

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

*Arizona Students Ass'n v. Arizona Board of Regents*, 824 F.3d 858, 867 (9th Cir. 2016) (holding 11th Amendment does not bar First Amendment retaliation claims, compiling cases, and citing *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986)).

227. As alleged above, Plaintiff has engaged in Constitutionally protected activity by making public statements about the *Owens v. Echard* case and in his statements accusing the State Bar of corruption in connection with Defendant Ivchenko, among other things.

228. The *Owens v. Echard* case was and still is a matter of significant public interest and concern.

229. Criminal misconduct by an attorney like Defendant Ivchenko is a matter of significant public interest and concern.

230. The State Bar of Arizona's failure to investigate or take action against lawyers engaged in serious criminal misconduct is a matter of significant public interest and concern that is entitled to the highest degree of First Amendment protection; "The First Amendment affords the broadest protection to ... political expression in order 'to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" *Arizona Students Ass'n*., 824 F.3d at 867 (quoting *Buckley v. Valeo*, 424 U.S. 1, 14, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976)).

231. Misconduct by a judge is a matter of significant public interest and concern.

232. Plaintiff has also engaged in Constitutionally protected activity by engaging in public speech including tweets, blog posts, YouTube videos, and other forms of expression involving matters of public interest and concern.

233. Plaintiff's public statements include commentary on matters of core political speech, including criticism of public officials as set forth in the article Plaintiff wrote accusing the State Bar of Arizona of dishonesty and corruption.

234. As alleged above, Defendant Lee, acting in his official capacity as an agent of the State Bar of Arizona, has acted against Plaintiff with the intent to retaliate against, obstruct, or chill Plaintiff's First Amendment rights.

235. Plaintiff's protected speech was a substantial motivating factor in Defendant Lee's harassment and retaliation of Plaintiff.

236. Defendant Lee has sought to punish Plaintiff for engaging in protected speech by, *inter alia*, demanding that Plaintiff spend significant time and resources "explaining" or "justifying" statements which are facially lawful and protected.

237. Defendant Lee's actions would chill a person of ordinary firmness from continuing to engage in the protected activity.

238. Defendant Lee's actions have, in fact, caused Plaintiff to substantially reduce and refrain from further public commentary based on a fear of further acts of unlawful retaliation by Defendant Lee or others working in concert with him.

239. Defendant Lee's conduct, as alleged above, is an unlawful violation of Plaintiff's rights under the First and Fourteenth Amendments, and is a violation of Plaintiff's civil rights as protected by 42 U.S.C. § 1983.

240. Based on the above, Plaintiff has suffered irreparable harm, and will continue to suffer such harm unless and until Defendant Lee's unlawful conduct is immediately and permanently enjoined.

241. Plaintiff has no adequate remedy at law. Plaintiff is therefore entitled to preliminary and permanent injunctive relief restraining Defendant Lee, and anyone acting in concert with him, from engaging in any further unlawful violations of Plaintiff's civil rights.

242. In addition, Plaintiff is further entitled to preliminary and permanent injunctive relief restraining Defendant Lee from threatening to seek, or actually seeking, disciplinary proceedings against Plaintiff pursuant to ER 8.1(b) and Supreme Court Rule 54(d) to the extent Plaintiff declines to respond to unlawful inquiries from Defendant Lee arising from his Constitutionally-protected speech or conduct.

//

//

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

**SECOND CAUSE OF ACTION — DECLARATORY RELIEF**
**(Against Defendants James D. Lee and Maret Vessella)**

243. Plaintiff realleges the factual allegations set forth above.

244. There currently exists an actual, justiciable controversy between Plaintiff and Defendants Lee and Vessella regarding the validity of certain Arizona Rules of Professional Conduct and certain Rules of the Supreme Court of Arizona. Specifically:

a. Arizona Supreme Court Rule 41(b)(7) provides that lawyers must "advance no fact prejudicial to the honor or reputation of a party or a witness unless required by the duties to a client or the tribunal."

b. ER 4.4(a) provides: "(a) In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden any other person, or use methods of obtaining evidence that violate the legal rights of such a person."

c. ER 8.2(a) provides: "(a) A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge …."

245. ER 8.1(b) provides that a lawyer shall not: "knowingly fail to respond to a <u>lawful demand</u> for information from an admissions or disciplinary authority …." (emphasis added)

246. Similarly, Arizona Supreme Court Rule 54(d) provides that grounds for discipline include: "refusal to cooperate with officials and staff of the state bar, the committee, the presiding disciplinary judge, a hearing panel, or a conservator appointed under these rules acting <u>in the course of that person's duties</u> …." (emphasis added).

247. As explained in *Ex parte Young*, state actors and agents have no legal duty or right to violate the United States Constitution, nor do they have any legal right or duty to violate the Constitutional rights of individuals such as Plaintiff. This includes, but is not limited to, actions taken to retaliate against or otherwise chill freedom of speech.

Accordingly, any actions taken by Defendant Lee, or any other agent of the State Bar, in violation of Plaintiff's constitutional rights are *not* lawful nor are they in the course of that person's duties:

> The general discretion regarding the enforcement of the laws when and as he deems appropriate is not interfered with by an injunction which restrains the state officer from taking any steps towards the enforcement of an unconstitutional enactment to the injury of complainant. In such case no affirmative action of any nature is directed, and <u>the officer is simply prohibited from doing an act which he had no legal right to do. An injunction to prevent him from doing that which he has no legal right to do is not an interference with the discretion of an officer</u>.

*Ex parte Young*, 209 U.S. at 159 (emphasis added).

248. Plaintiff is entitled to a declaratory judgment finding that each of Mr. Lee's demands to Plaintiff, as set forth above and including State Bar File No. 26-0934, are <u>not</u> "lawful demands for information" within the meaning of ER 8.1(b), nor were those demands made "in the course of that person's duties" to the extent those demands arise from, retaliate again, or otherwise seek to chill, Plaintiff's lawful exercise of his First Amendment rights.

249. Plaintiff is entitled to a judgment declaring each of these demands was unlawful and occurred outside the scope of any of Mr. Lee's legitimate duties as Senior Bar Counsel.

250. Plaintiff is further entitled to a judgment declaring Supreme Court Rule 41(b)(7) and ER 4.4(a) are each unconstitutional on their face, and as applied to the facts of this case.

251. The United States Supreme Court has determined that "<u>disciplinary rules governing the legal profession cannot punish activity protected by the First Amendment</u>, and that First Amendment protection survives even when the attorney violates a disciplinary rule he swore to obey when admitted to the practice of law." *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1054 (1991).

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

252. *Gentile* is controlling law in the State of Arizona and while acting on behalf of the State Bar of Arizona, Defendant Lee is required to follow it whether he agrees with it or not.

253. Supreme Court Rule 41(b)(7) and ER 4.4(a) each conflict with the First Amendment to the United States Constitution to the extent they seek to prohibit the publication of speech simply because it may be embarrassing, offensive, or "prejudicial to the honor or reputation of a party or a witness".

254. The State of Arizona has no lawful authority to punish or prohibit embarrassing speech by lawyers or anyone else. *See FCC v. Pacifica Foundation*, 438 U.S. 726, 745 (1978) (holding, "[T]he fact that society may find speech offensive is not a sufficient reason for suppressing it. Indeed, if it is the speaker's opinion that gives offense, that consequence is a reason for according it constitutional protection.")

255. Supreme Court Rule 41(b)(7) and ER 4.4(a) each conflict with the First Amendment to the United States Constitution to the extent they authorize punishing lawyers for speech that may simply "embarrass, delay, or burden any other person". *See NAACP v. Claiborne Hardware Co*., 458 U.S. 886, 910 (1982) (holding "Speech does not lose its protected character ... simply because it may embarrass others or coerce them into action ….")

256. By virtue of the Supremacy Clause of the U.S. Constitution, the rights protected by the U.S. Constitution are the supreme law of the land, and if any state law, rule or regulation attempts to restrict or violate rights protected by the U.S. Constitution that law is void, because; "a law repugnant to the Constitution is void." *Marbury v. Madison*, 5 U.S. 137, 180 (1803).

257. Other state bars, such as the State Bar of California (of which Plaintiff is a member) have modified their ethical rules to *eliminate* the unlawful prohibition against "embarrassing others". Specifically, California's equivalent rule (Professional Conduct Rule 3.2), omits any reference to conduct that may embarrass another: "In representing a

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

client, a lawyer shall not use means that have no substantial purpose other than to delay or prolong the proceeding or to cause needless expense."

258. The fact that Plaintiff's speech is embarrassing to Defendant Ivchenko or offensive to Defendant Lee's personal view of polite decorum is irrelevant; "If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414 (1989).

259. Plaintiff is entitled to declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 holding that Supreme Court Rule 41(b)(7) and ER 4.4(a) each conflict with the First Amendment to the United States Constitution and are therefore unenforceable, both facially and as applied to the facts of this case.

260. Defendant Lee has taken the position that ER 8.2(a) may be used to punish a lawyer for <u>truthful</u> criticism of a judge.

261. Defendant Lee has also taken the position that truth is not a defense to any claim based on a lawyer's criticism of a judge, a position that directly conflicts with the Ninth Circuit's decision in *Standing Committee v. Yagman*, 55 F.3d 1430, 1438 (9th Cir. 1995) in which the Court stated: "Attorneys who make statements impugning the integrity of a judge are, however, entitled to other First Amendment protections applicable in the defamation context. To begin with, attorneys may be sanctioned for impugning the integrity of a judge or the court only if their statements are false; truth is an absolute defense

262. Defendant Lee has taken the position that ER 8.2(a) may be used to punish expressions of opinion even when the opinion is based on accurate, fully disclosed truthful facts.

263. That position is incorrect as a matter of law; "statements impugning the integrity of a judge may not be punished unless they are capable of being proved true or false; statements of opinion are protected by the First Amendment unless they 'imply a false assertion of fact.'" *Yagman*, 55 F.3d at 1438.

264. Defendant Lee's position that ER 8.2(a) may be used to punish expressions of opinion even when the opinion is based on accurate, fully disclosed truthful facts is also directly contrary to Comment 1 to ER 8.2(a) which states: "Assessments by lawyers are relied on in evaluating the professional or personal fitness of persons being considered for election or appointment to judicial office and to public legal offices, such as attorney general, prosecuting attorney and public defender. Expressing honest and candid opinions on such matters contributes to improving the administration of justice."

265. Plaintiff intends to continue publishing truthful criticism of Judge Julie Mata in the future, but is fearful that doing so, absent injunctive and declaratory relief from this Court, will expose him to further harassment and retaliation by Defendant Lee.

266. Plaintiff is entitled to a judgment declaring that to the extent Defendant Lee has argued that ER 8.2(a) may be used to punish truthful statements, and honest expressions of opinion based on fully disclosed accurate facts, that interpretation of ER 8.2(a) is unconstitutional and unenforceable.

267. Furthermore, pursuant to 42 U.S.C. § 1983 and *Ex parte Young*, 209 U.S. 123 (1908), Plaintiff is entitled to preliminary and permanent injunctive relief barring Defendants Lee, Vessella, and anyone else acting in concert with them, from enforcing, or threatening to enforce, Supreme Court Rule 41(b)(7), ER 4.4(a), and ER 8.2(a) and any other Rule of Professional Conduct or of the Supreme Court, against Plaintiff to the extent that such enforcement is based on Plaintiff's Constitutionally-protected speech, including, but not limited to, all of the statements identified herein.

268. Plaintiff is further entitled to a judgment declaring that every statement he has made regarding Judge Mata is either factually true, substantially true, or constitutes a protected expression of opinion based on fully disclosed facts.

269. Plaintiff is entitled to a judgment declaring statements regarding Judge Mata are entitled to full protection under the First Amendment, and that Plaintiff may freely republish those statements in the future without fear of harassment or discipline by Defendant Lee or any other state agent.

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

**THIRD CAUSE OF ACTION — DECLARATORY RELIEF**
**(Against Defendants Andrew & Renee Ivchenko)**

270. Plaintiff realleges the factual allegations set forth above.

271. A dispute has arisen between Plaintiff and Defendants Andrew and Renee Ivchenko regarding the accuracy of certain statements published by Plaintiff, including those statements contained in the article entitled: *Is The State Bar of Arizona Broken/Corrupt? (Yes, it is...here's proof)* and the related supporting pages.

272. Every statement Plaintiff has made concerning Defendants Andrew and Renee Ivchenko is either entirely true, or substantially true (meaning the "gist" or "sting" of the statement is accurate).

273. While acting as an attorney, Defendant Andrew Ivchenko made knowingly false statements to the United States Copyright Office and to multiple third parties.

274. While acting as an attorney, Defendant Andrew Ivchenko made false statements under oath.

275. Plaintiff's statements regarding Mr. and Mrs. Ivchenko involve matters of public interest and concern.

276. All of Plaintiff's statements regarding Mr. and Mrs. Ivchenko constitute free speech entitled to the highest degree of protection under the First Amendment to the United States Constitution.

277. According to controlling U.S. Supreme Court precedent, Constitutionally-protected speech cannot be punished under any Rule of Professional Conduct, or any other law adopted by the Arizona Supreme Court, except for limited situations that do not apply here.

278. Plaintiff is entitled to a judgment against Defendants Andrew and Renee Ivchenko declaring the Plaintiff's speech concerning them is entirely truthful and accurate, and that as such it is protected by the First Amendment.

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

**FOURTH CAUSE OF ACTION — DECLARATORY RELIEF**
**(Against Defendants Andrew & Renee Ivchenko)**

279. Plaintiff realleges the factual allegations set forth above.

280. Defendant Renee Ivchenko is currently listed as the owner of a copyrighted work – an untitled photograph – that has been assigned Registration Number VA0002154452.

281. As alleged above, Mrs. Ivchenko obtained the certificate of registration for this work by fraud – specifically by her husband, Andrew, making knowingly false statements of material fact in an application for registration that he submitted to the U.S. Copyright Office in March 2019.

282. A certificate of copyright registration obtained by fraud is not valid as a matter of law.

283. 17 U.S.C. § 411(b)(2) provides:

> In any case in which inaccurate information described under paragraph (1) is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration.

284. Based on that provision:

> [O]nce a [litigant] alleges that (1) a … certificate of registration contains inaccurate information; (2) 'the inaccurate information was included on the application for copyright registration'; and (3) the inaccurate information was included on the application 'with knowledge that it was inaccurate,' a district court is then required to submit a request to the Register of Copyrights 'to advise the court whether the inaccurate information, if known, would have caused [it] to refuse registration. [citations] If it is determined that a registration contains inaccurate information, and that the inaccurate information was included in the registration application with knowledge that the information was incorrect, and that the inaccurate information would have caused the Copyright Office to refuse registration, then a district court may declare the registration invalid.

*Yellowcake, Inc. v. Morena Music, Inc.*, 522 F. Supp. 3d 747, 777 (E.D. Cal. 2021).

285. Mr. Ivchenko has accused Plaintiff of professional misconduct because Plaintiff published statements claiming Mr. Ivchenko committed fraud on the Copyright Office in connection with the registration of work VA0002154452.

286. In his submission to the State Bar of Arizona, Mr. Ivchenko stated:

> These are not statements of opinion or rhetorical hyperbole; they are direct assertions of specific criminal conduct presented as fact. Those assertions are false and misleading. The referenced conduct—obtaining a copyright registration and submitting related materials—was undertaken through formal processes and is documented in public records. No court or adjudicative body has found that Andrew Ivchenko committed criminal fraud, perjury, or any related offense.

287. Because Mr. Ivchenko has accused Plaintiff of misconduct for making "false and misleading" statements regarding the validity of work VA0002154452, Plaintiff is entitled to an order from this Court issued pursuant to 17 U.S.C. § 411(b)(2) informing the Copyright Office that inaccurate information was submitted to the office by Mr. Ivchenko in connection with the registration application for that work, and asking the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration.

288. Upon receipt of the Register's response to that question, Plaintiff is entitled to a judgment declaring that the certificate of registration for work VA0002154452 was obtained by fraud, that the registration certificate is invalid, and that Mrs. Ivchenko holds no exclusive rights in that work.

## FIFTH CAUSE OF ACTION — ABUSE OF PROCESS
## (Against Defendant Andrew Ivchenko)

289. Plaintiff realleges the factual allegations set forth above.

290. The Supreme Court of Arizona has adopted rules governing the practice of law in Arizona, including rules which permit complaints to be submitted to the State Bar of Arizona regarding alleged attorney misconduct.



GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

291. Those rules, including Supreme Court Rule 55, allow bar counsel to "evaluate all information coming to its attention, in any form, by charge or otherwise, alleging unprofessional conduct …" and to take action in response to such information.

292. Supreme Court Rule 55(b) also establishes a process known as a "screening investigation" which bar counsel may use to demand that a lawyer submit a response to an allegation of misconduct.

293. A lawyer who is the subject of a screening investigation is not free to ignore the investigation, regardless of its of merit. Among other things, a lawyer who fails to respond to a screening investigation may face punishment under various rules.

294. Screening investigations place a substantial burden on the responding lawyer, even when a complaint is entirely fraudulent.

295. As alleged above, Defendant Ivchenko has abused the State Bar's compulsory process for submitting complaints against lawyers by, among other things, submitting allegations of misconduct against Plaintiff which Mr. Ivchenko knew were materially false.

296. Based on the events described above, Mr. Ivchenko knows the State Bar of Arizona and Defendant Lee are corrupt.

297. Mr. Lee has shown he is willing to use unlawful means to harass Plaintiff, including commencing screening investigations and pursuing disciplinary charges without any valid factual or legal basis, as Mr. Lee has done repeatedly in the past.

298. Mr. Ivchenko has used the State Bar's complaint submission and screening investigation process in a wrongful manner that was not proper in the regular course.

299. Mr. Ivchenko has sought to weaponize the State Bar not for any legitimate purpose, but solely to pressure Plaintiff to remove Constitutionally-protected speech from his website and to conceal his own unlawful conduct.

300. Mr. Ivchenko's abuse of the State Bar's complaint submission process was committed solely for improper purposes, and his conduct has resulted in injury, damage, loss, or harm to Plaintiff in an amount to be determined at trial.

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

301. Arizona Supreme Court Rule 48(*l*) purports to extend absolute immunity to any person who submits a charge to the State Bar of Arizona, even when the charge is knowingly false.

302. Supreme Court Rule 48(*l*) was held unconstitutional, in part, in *Goldman v. Sahl*, 248 Ariz. 512, 462 P.3d 1017 (App. 2020), on the basis that it violated the anti-abrogation clause of the Arizona Constitution.

303. *Goldman* further specifically held that notwithstanding Supreme Court Rule 48(l): "professional-discipline proceedings are subject to claims of improper litigation conduct, and the Arizona Constitution prevents the abrogation of such claims …."

304. Here, Mr. Ivchenko committed the tort of abuse of process when he submitted a knowingly false charge in State Bar File No. 26-0934 and then took additional steps which included discussing the matter with Mr. Lee, informing Mr. Lee that all of Plaintiff's statements identified in State Bar File No. 26-0934 were true, and encouraging Mr. Lee to commence a screening investigation that Mr. Ivchenko knew was factually and legally groundless.

305. Mr. Ivchenko further knew that due to Mr. Lee's lengthy history of unlawful harassment directed at Plaintiff, and Mr. Lee's documented history of taking unlawful positions in an effort to harass and retaliate against Plaintiff, that submitting a false charge to Mr. Lee would cause Plaintiff to suffer extreme emotional distress.

306. Mr. Ivchenko's conduct was undertaken for the benefit of his marital community with Mrs. Ivchenko. Accordingly, the marital community is liable for damages pursuant to A.R.S. § 25–215(D).

307. Based on the foregoing, Plaintiff is entitled to an award of money damages, including punitive damages, against Mr. Ivchenko in an amount to be determined at trial.

**JURY DEMAND**

308. Pursuant to Fed. R. Civ. P. 38, Plaintiff demands trial by jury as to all issues so triable.

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

Wherefore, Plaintiff prays for the following relief:

A. For a declaratory judgment stating that Defendant Lee's conduct, as alleged herein, represents unconstitutional government coercion and retaliation under the First and Fourteenth Amendments to the United States Constitution and in violation of 42 U.S.C. § 1983;

B. For a judgment declaring that Defendant Lee's demands to Plaintiff are not lawful requests for information, to the extent those demands are based on Plaintiff's Constitutionally-protected speech, and declaring that Plaintiff is under no lawful obligation to respond to respond further to those demands, or any future demands based on the same or similar protected speech;

C. For a judgment declaring Plaintiff's statements regarding Julie Ann Mata were entirely true or that they represented protected expressions of opinion based on fully-disclosed facts, and that such statements are fully protected under the First Amendment;

D. For a declaratory judgment holding that the laws and/or rules described above are unconstitutional and unenforceable, both on their face and as applied to the facts of this case;

E. For a preliminary and permanent injunction enjoining Defendants Lee, Vessella, their agents, and successors in office from taking any future actions to coerce, threaten, or intimate repercussions directly or indirectly based on Plaintiff's protected speech, or undertaking enforcement action against Plaintiff for engaging in other speech protected under the First Amendment.

F. For a judgment granting declaratory relief as to Defendants Andrew and Renee Ivchenko as alleged above;

G. For an award of money damages against Defendants Andrew and Renee Ivchenko in an amount to be determined at trial;

H. For an award of Plaintiff's costs;

I. For such other and further relief as justice may require.

David S. Gingras

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

**VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United State of America and the State of Arizona that the foregoing is true and correct.

EXECUTED ON October 29, 2026.

David S. Gingras

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

## INDEX OF EXHIBITS

| Exhibit | Description |
|---|---|
| 1 | First Amended Complaint – Grant v. Ivchenko; Case No. 21-cv-108-JJT |
| 2 | Letter to State Bar of Arizona re: Andrew Ivchenko; May 7, 2020 |
| 3 | Letter from State Bar of Arizona; May 28, 2020 |
| 4 | Bar Complaint from Andrew Ivchenko; October 29, 2021 |
| 5 | Article – *Is The State Bar of Arizona Broken/Corrupt?* |
| 6 | ChatGPT Memorandum from Andrew Ivchenko |
| 7 | Letter from State Bar of Arizona re File No. 26-0934 |
| 8 | Letter from State Bar of Arizona re File No. 24-3080 |
| 9 | Letter to State Bar of Arizona; January 2, 2025 |
| 10 | Letter to State Bar of Arizona; January 6, 2025 re: File No. 24-3080 |
| 11 | First Amended Complaint – *In re Gingras*; PDJ2026-9010 |
| 12 | Notice of Change of Judge |
| 13 | Affidavit of David S. Gingras |
| 14 | Letter from State Bar of Arizona re: 24-1692 (Holli Wammack) |